# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **PENNY L. BUTLER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-3562-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION[1]

Claimant Penny Latese Butler ("Ms. Butler") brings this action pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Ms. Butler timely

---

[1]  The court notes that, on February 14, 2013, Carolyn W. Colvin was named the Acting Commissioner of the Social Security Administration. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

pursued and exhausted her administrative remedies available before the Commissioner. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Butler was forty-six years old at the time of the onset of her alleged disability on June 1, 2010, and was forty-eight years at the time of the Administrative Law Judge's decision ("ALJ"). (Tr. 10). She has a limited education, never finishing ninth grade, and took special education classes in English and Math. (Tr. 34). Ms. Butler's past work experience includes home health aide, general labor as a box-maker, and general cleaning and janitorial type work. (Tr. 44). She claims she became disabled because of a heart attack, short term memory loss, anxiety, high blood pressure, and acid reflux. (Pl.'s Br. 2).

On December 13, 2010, Ms. Butler protectively filed applications for DIB and SSI. (Tr. 10). On March 21, 2011, the Commissioner initially denied these claims. *Id.* Ms. Butler timely filed a written request for a hearing on March 28, 2011. *Id.* The ALJ conducted a hearing on the matter on November 9, 2011. *Id.* On March 21,

---

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2012, the ALJ issued his opinion concluding that Ms. Butler was not disabled and denied her benefits. (Tr. 10, 20). Ms. Butler timely petitioned the Appeals Council ("AC") to review the decision on March 21, 2012, and on August 13, 2012, the AC declined to review her claims, and, as a result, the ALJ's disability determination became the final decision of the Commissioner. (Tr. 1).

Ms. Butler filed a complaint with this court on October 10, 2012, seeking review of the Commissioner's ruling. (Doc. 1). The parties having fully briefed the matter, the court has carefully considered the parties' arguments and the record, and, for the reasons stated below, reverses the Commissioner's denial of benefits and remands for further development of the record.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support

a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, current through July 11, 2013.

4

disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i–v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
> (2) whether the claimant has a severe impairment;
> (3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
> (4) whether the claimant can perform his or her past work; and
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

> 2. The claimant has not engaged in substantial gainful activity since June 1, 2010, the alleged onset date.

> 3. The claimant has the following severe impairments: coronary artery disease secondary to myocardial infarction, anxiety, and depression.

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except the claimant can lift and carry twenty pounds frequently and ten pounds occasionally; the claimant can stand or walk six hours in an eight-hour workday and sit for six hours in an eight-hour workday; the claimant can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; the claimant cannot work around unprotected heights, dangerous moving machinery, or ladders, ropes, or scaffolds; the claimant should avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, and gases; the claimant can remember simple and detailed but not complex instructions; the claimant is able to sustain concentration and attention for two hour period to complete

6

simple, detailed tasks in a regular workday at an acceptable pace and attendance schedule; proximity to others should not be intense; the claimant is able to interact appropriately in casual settings and will respond appropriately to constructive instructions; the claimant is able to respond to at least simple and infrequent changes in routine.

6. The claimant is unable to perform and past relevant work.

7. The claimant . . .  was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined by the Social Security Act, from June 1, 2010 through the date of this decision.

(Tr. 12–19).

Accordingly, the ALJ concluded that Ms. Butler had not been under a disability, as defined in the Social Security Act, from June 1, 2010, through the date of the ALJ's decision.

## ANALYSIS

## I. INTRODUCTION

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). The court has the "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] Ms. Butler asserts that (1) the ALJ's decision is not supported by substantial evidence and (2) improper legal standards were applied. (Pl.'s Br. 1). In its review, this court finds that the ALJ's decision was not supported by substantial evidence and that the ALJ applied the law incorrectly when he did not mention, much less assign any weight to, several critical pieces of medical evidence.

## II. THE ALJ FAILED TO WEIGH ALL THE MEDICAL EVIDENCE[5]

The ALJ is required to state specifically the weight accorded each item of evidence and the reasons for his decision. *See, e.g.*, *Cowart v. Schweiker*, 662 F.2d

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5] The undersigned has recently rendered another reversal from which the framework, analysis, and disposition of this appeal persuasively flow. See Nix v. Colvin, 1:12-CV-1128-VEH (Docs. 11, 12) (N.D. Ala. Aug. 23, 2013) (reversing and remanding for further development due to inadequate treatment of medical evidence).

731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision . . . In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."); *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) ("The decision rendered by the ALJ also does not make clear the weight accorded the evidence considered."); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985) ("We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." (citation omitted)); *see Nix v. Colvin*, No. 1:12-CV-1128-VEH, (Doc. 11 at 8) (N.D. Ala. Aug. 23, 2013) ("The ALJ's vague treatment of the medical evidence constitutes reversible error." (emphasis omitted)).

However, the ALJ can discredit medical evidence and "may reject the opinion of any physician when the evidence supports a contrary conclusion," albeit with a specific explanation. *Bloodsworth v. Heckler*, 703 F.2d at 1240. Also, there is no "rigid requirement" that the ALJ must specifically refer to every piece of evidence as long as the decision allows the court to conclude that the ALJ considered the medical condition as a whole. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Generally, ALJs must accord considerable weight to the claimant's treating

physician's opinion, absent good cause for not doing so. *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985) (per curiam).  Also, specialists are generally entitled to more weight than nonspecialist medical opinion when the ALJ balances conflicting medical testimony. *King v. Barnhart*, 320 F. Supp. 2d 1227, 1231-32 (N.D. Ala. 2004).  Additionally, nurse practitioners cannot be accepted as medical evidence unless the nurse "works closely, is supervised, and has her diagnoses approved by a doctor." *Davis v. Colvin*, No. 2:12-CV-2867-VEH, (Doc. 8 at 11) (N.D. Ala. Nov. 18, 2013). Nurse practitioners can only be recognized as an "other source" to "show the severity of [the] impairment(s) and how it affects [the] ability to work."  20 C.F.R. § 404.1513(d)(1) (2013).  If a nurse practitioner satisfies the "medical evidence" requirements, then the nurse can also be considered a treating source due more weight. *King v. Astrue*, 493 F. Supp. 2d 1232, 1234 (S.D. Ala. 2007).

Here, the record has no evidence of disability provided by a treating physician. As Ms. Butler's family nurse practitioner, Ms. McCary has seen the claimant for a period of years at Cooper Green Hospital, but the record does not substantiate that Ms. McCary satisfies the requirements to be considered acceptable medical evidence. More specifically, while Ms. McCary apparently works under Dr. Mark Wilson, the record does not contain any information about his supervision, approval, or even

knowledge of Ms. Butler.  (Tr. 289-290).  Therefore, the ALJ correctly disregarded Ms. McCary's statement that Ms. Butler could not sustain a regular work week because of her maladies.  (Tr. 289).

While the ALJ appropriately addressed Ms. McCary's status as an acceptable medical source, the ALJ made no reference, other than a vague mention during the hearing, of two consultative examiners and their medical assessments of Ms. Butler. (*See* Tr. 43 (The ALJ asked the claimant at the hearing if she "remember[ed] going to see this psychologist, [sic] this mental health professional, that Social Security sent you to?")).

First, on February 19, 2011, Dr. Timothy Preston (M.D.) performed a consultative examination ("CE") in which he reviewed Ms. Butler's records, took a history of her present illnesses, and recorded her daily activities, current medications, past medical history, family history, and social history.  (Tr. 230).  Dr. Preston then gave Ms. Butler a physical exam.  (Tr. 231-34).  He diagnosed Ms. Butler with ischemic heart disease, residual angina from her heart attack, subjective hearing loss, history of anxiety and depression, hypertension, hyperlipidemia, and intraocular pressure.  (Tr. 233).  This CE was never mentioned in the ALJ's decision, and thus the court is unable to tell what weight, if any, was given to Dr. Preston's medical opinion or diagnoses.  (Tr. 10-20).

11

Second, on January 25, 2012, Ms. Butler received a Psychological Evaluation CE from clinical psychologist Dr. Alan Blotcky (Ph.D.).  (Tr. 299).  After meeting with Ms. Butler and administering an MMPI-2 Test to assess her psychiatric status, Dr. Blotcky found that Ms. Butler produced an invalid profile because she endorsed so many psychiatric symptoms and problems, resulting in elevated clinical scales. (Tr. 300).  Dr. Blotcky therefore diagnosed Ms. Butler with post-traumatic stress disorder, dysthymic disorder, histrionic personality disorder, and borderline intellectual abilities.  (Tr. 301).  In addition, Dr. Blotcky noted that Ms. Butler had been a victim of physical and sexual abuse in the past, as well as an abuser of both alcohol and marijuana.  *Id.*

Although Dr. Blotcky opined that Ms. Butler's test results were invalid, he believed that her histrionic personality disorder caused the invalid results: "She is emotional, reactive, labile, dramatic, suggestible, naive, impaired in her ability to handle stress, prone to develop somatic complaints in the face of stress, and with poor psychological-mindedness." *Id.*  Additionally, Dr. Blotcky did not believe that Ms. Butler was "producing or exaggerating symptoms for secondary gain." *Id.*  She had not been seeking out medical or psychiatric treatment, she had not been doctor shopping, she had never seen a mental health professional, and had never been hospitalized for psychiatric reasons.  *Id.*  Dr. Blotcky then recommended that Ms.

12

Butler be involved in ongoing and regular psychiatric treatment, that she be seen by physicians for her medical problems, and that Ms. Butler live with a family member or friend.  (Tr. 302).  He concluded his evaluation by stating that "Ms. Butler's prognosis is very poor because of her three psychiatric disorders and limited intellect," the latter of which is "a lifelong problem."  *Id.*

In his decision, the ALJ did not discuss or indicate a comparative weight for Dr. Blotcky's opinion.  Although the Commissioner's brief suggests that Dr. Blotcky's opinion was invalid because it was inconsistent with Ms. Butler's treating physicians (Def.'s Br. 17), the record lacks any disability-related opinions from Ms. Butler's treating physicians.  Further, the ALJ did not provide this (or any) reason for discounting Dr. Blotcky's opinion, and the ALJ's error cannot be corrected by the Commissioner's attorneys in their brief.

Thus, although the ALJ committed no error in discounting the evidence provided by Ms. McCary, the ALJ improperly ignored two critical CEs that were favorable to Ms. Butler's disability claims.  (Tr. 12-19).  Instead, the ALJ relied most heavily upon, and essentially adopted the opinions contained in a Physical RFC Assessment by Dr. Steven Dobbs (Ph.D.) and a Psychiatric Review by Dr. Glenn Carmichael, M.D.  (Tr. 17).

The ALJ stated that these doctors "had the benefit of reviewing the entire

13

objective . . . record when forming their opinions and are familiar with our disability program and their requirements . . . [and] their opinions are supported by . . . the objective evidence of record." *Id.*   However, the record indicates that these two doctors never examined Ms. Butler and instead merely performed a paper review of her medical records when providing their respective physical and mental functional assessments of her.  (Tr. 241-266).  Furthermore, the Eleventh Circuit has made it clear that the opinions of non-examining physicians are "entitled to little weight . . . ." *Shafarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987); *see id.* ("The opinions of nonexamining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." (citing *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985) (per curiam))).

The ALJ's inadequate treatment of the opinions of Drs. Preston and Blotcky in his decision is problematic for other reasons.  When incompatible medical opinions and other evidence relating to a claimant's allegedly disabling conditions are contained in the record, then the ALJ's obligation to specify the weight given to such differing proof becomes even more important.  *See Cowart*, 662 F.2d at 735. Otherwise, the court is ill-equipped to decipher, much less to aptly review, how the ALJ resolved those matters of conflict.  *Id.* (finding reversible error in the absence of

14

assigning weight, because such a "statement tells us nothing whatsoever—it goes without saying that the ALJ gave the testimony the weight he believed should be accorded to it"); *Hudson*, 755 F.2d at 786 (rejecting as inadequate ALJ's indication that he has "carefully considered all the testimony given at the hearing and the documents described in the List of Exhibits. . . .") (internal quotation marks omitted); *cf. Jackson v. Astrue*, No. CV 107-020, 2008 WL 596769, at *6 (S.D. Ga. Mar. 4, 2008) ("In this case, Plaintiff contends that the ALJ's consideration of Plaintiff's psychological impairment is inadequate because not only did the ALJ fail to address the [doctors'] opinions, the ALJ also failed to explain the weight given to the medical opinions she did cite.").

In sum, two important CEs are entirely undiscussed in the ALJ's decision, and the court cannot responsibly reweigh (or, in this case, weigh for the first time) such pivotal proof when evaluating the merits of the Commissioner's denial of benefits. *Cf. Savor v. Shalala*, 868 F. Supp. 1363, 1366 (M.D. Fla. 1994) ("Therefore, in determining whether the Secretary's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.") (emphasis added).  The court is therefore unable to find substantial evidence supports the Commissioner's decision.

## <u>CONCLUSION</u>

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that ALJ did not fulfill his duty to assign weight to key medical evidence pertaining to Ms. Butler's claimed disabilities.

**DONE** and **ORDERED** this the 4th day of December, 2013.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge